UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY AUSTIN, | No. C-12-3349 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; AND REMANDING FOR ADDITIONAL PROCEEDINGS** |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |
| _____/ | **(Dockets Nos. 13, 21)** |

        On February 26, 2010, Plaintiff Rodney Austin filed an application for Supplemental Security Income ("SSI") benefits, alleging disability beginning October 27, 1994. His claim was denied. Mr. Austin has exhausted his administrative remedies with respect to his claim of disability. This Court has jurisdiction to review the administrative decision pursuant to 42 U.S.C. § 405(g). Mr. Austin has moved for summary judgment or, in the alternative, a remand for additional proceedings. The Commissioner has cross-moved for summary judgment. Having considered the parties' briefs and accompanying submissions, the Court hereby **GRANTS** Mr. Austin's motion for summary judgment and **DENIES** the Commissioner's motion.

## I.   FACTUAL & PROCEDURAL BACKGROUND

        In February of 2010, Mr. Austin filed an application for SSI benefits, alleging disability as of October 27,1994, due to combined mental and physical impairments. *See* AR 112-19 (Application and Amendments to Application). Mr. Austin's application was initially denied on September 29, 2010. *See* AR 54-57 (Notice of Disapproved Claims). Subsequently, his request for reconsideration

was denied on January 18, 2011. *See* AR 61-66 (Notice of Reconsideration). Mr. Austin requested a hearing before an Administrative Law Judge ("ALJ"). *See* AR 82 (Request for Hearing by ALJ). A hearing was conducted before an ALJ on October 3, 2011. *See* AR 31-48 (Hearing Transcript).

On October 26, 2011, the ALJ held that Mr. Austin was not disabled under the Section 1614(a)(3)(A) of the Social Security Act. *See* AR 25. The ALJ evaluated Mr. Austin's disability claim using the five-step sequential evaluation process required under 20 C.F.R. §§ 404.1520 and 416.920.

> Step one disqualifies claimants who are engaged in substantial gainful activity from being considered disabled under the regulations. Step two disqualifies those claimants who do not have one or more severe impairments that significantly limit their physical or mental ability to conduct basic work activities. Step three automatically labels as disabled those claimants whose impairment or impairments meet the duration requirement and are listed or equal to those listed in a given appendix. Benefits are awarded at step three if claimants are disabled. Step four disqualifies those remaining claimants whose impairments do not prevent them from doing past relevant work considering the claimant's age, education, and work experience together with the claimant's residual functional capacity ("RFC"), or what the claimant can do despite impairments. Step five disqualifies those claimants whose impairments do not prevent them from doing other work, but at this last step the burden of proof shifts from the claimant to the government. Claimants not disqualified by step five are eligible for benefits.

*Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003).

At step one, the ALJ found that Mr. Austin has not engaged in substantial gainful activity since his disability application on February 26, 2010. *See* AR 18 (ALJ decision). At step two, the ALJ concluded that Mr. Austin suffers from several severe impairments including degenerative disc disease of the thoracic and lumbar spine, left ankle osteopenia, obesity, depression, and posttraumatic stress disorder (PTSD). *See* AR 18. With respect to step three, the ALJ determined that Mr. Austin does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. *See* AR 18-19. At step four, the ALJ found that Mr. Austin possesses the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 CFR 416.967(a) with the following modifications: can lift 20 pounds, can sit for six hours in an eight-hour day, can stand and walk for two hours in an eight-hour day, and can do simple repetitive tasks. *See* AR 20. Although the ALJ

2

determined that Mr. Austin's medically determinable impairments could reasonably be expected to cause the alleged symptoms, the ALJ also found that Mr. Austin's statements regarding the intensity, persistence, and limiting effects of his symptoms were not credible to the extent that they conflicted with an RFC for sedentary work. *See* AR 21. In so finding, the ALJ relied on statements by Mr. Austin's treating psychiatrist, Dr. James Dotson, and a nurse practitioner that indicated potential malingering, as well as Mr. Austin's failure to comply with prescribed treatments. *See id.* Further, the ALJ discredited opinions by Mr. Austin's treating physician Dr. Diana Coffa and a consulting psychiatrist Dr. Jena Al-Mufti. *See* AR 22-23. The ALJ determined that both Dr. Coffa and Dr. Al-Mufti had uncritically relied on Mr. Austin's unconvincing subjective statements and found their respective opinions unpersuasive. *See id.* At step five, the ALJ found that Mr. Austin has no past relevant work; however, after consulting with a vocational expert, the ALJ ultimately determined that Mr. Austin's RFC, age, education, and work experience allow him to participate in work that exists in significant numbers in the national economy. *See* AR 23-24.

Thereafter, Mr. Austin appealed the ALJ's decision. The Appeals Council denied the appeal on May 4, 2012. AR 1. Mr. Austin then requested review in this Court. Docket No. 1.

## II.   DISCUSSION

A court may set aside the Commissioner's denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and it requires more than a scintilla, but less than a preponderance of evidence. *Id.* In determining whether substantial evidence supports the Commissioner's decision, the Court reviews the administrative record as a whole. *Id.* Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed. *Andrews v. Shalala*, 53 F.3d 1035, 1040 (9th Cir. 1995).

In the instant case, Mr. Austin contends that the ALJ erred for three reasons: (1) the ALJ erroneously discredited Mr. Austin's statements regarding the severity of his symptoms; (2) the ALJ improperly rejected the opinion of Mr. Austin's treating physician, Dr. Coffa; and (3) the ALJ incorrectly rejected the opinion of Mr. Austin's consulting psychiatrist, Dr. Al-Mufti. *See* Plaintiff's

1  Motion for Summary Judgment, Docket 13, at 4-14 ("Plaintiff's Motion").  Each of these
2  contentions is addressed below.
3  A.     Mr. Austin's Credibility
4        First, Mr. Austin argues that the ALJ did not cite sufficient evidence to discredit Mr. Austin
5  when all of the evidence is considered.  *See id.* at 11.  The ALJ must make a credibility
6  determination with sufficiently specific findings such that a court can conclude that the ALJ did not
7  arbitrarily discredit the claimant's testimony.  *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir.
8  2002).  "In weighing a claimant's credibility, the ALJ may consider [the claimant's] reputation for
9  truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his
10  daily activities, his work record, and testimony from physicians and third parties concerning the
11  nature, severity, and effect of the symptoms of which he complains."  *Light v. SSA*, 119 F.3d 789,
12  792 (9th Cir. 1997).  The ALJ may also consider an "unexplained, or inadequately explained, failure
13  to . . . follow a prescribed course of treatment."  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). .
14  "[I]f the ALJ's credibility finding is supported by substantial evidence in the record," the Court
15  "may not engage in second-guessing."  *Thomas*, 278 F.3d at 959.
16        Here, the issue is whether the ALJ properly discredit Mr. Austin's reports of pain and related
17  symptoms.  In evaluating the credibility of a claimant's subjective reports of pain or other
18  symptoms, an ALJ follows a two step process.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th
19  Cir. 2007).  First, the ALJ must determine whether the record contains objective medical evidence of
20  an underlying impairment "which could reasonably be expected to produce the pain or other
21  symptoms alleged."  *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991).  The plaintiff need not
22  show that the impairment could reasonably be expected to produce the *severity* of symptom
23  reported, only that it could reasonably have caused the *type* of symptom reported.  *Lingenfelter*, 504
24  F.3d at 1036 (citing *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir.1996)).
25        Where the claimant meets this first test, the ALJ must then consider whether there is
26  affirmative evidence of malingering.  *Lingenfelter*, 504 F.3d at 1036.  If there is not, "the ALJ must
27  provide clear and convincing reasons for rejecting the claimant's testimony regarding the severity of
28  symptoms."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  On the other hand, where

there is affirmative evidence of malingering, the ALJ need not meet the clear and convincing evidence standard. *See Flores v. Comm'r of Soc. Sec.*, 237 F. App'x 251, 252 (9th Cir. 2007); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (holding that if there exists affirmative evidence of malingering, the general requirement that the ALJ provide clear and convincing reasons for an adverse credibility finding does not apply).

In this case, the ALJ found that there was objective medical evidence establishing that Mr. Austin had degenerative disc disease of the thoracic and lumbar spine, left ankle osteopenia, depression and PTSD. AR 18. The ALJ further found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 21. The next inquiry is thus whether there is affirmative evidence of malingering in the record.

Though the ALJ did not make an explicit finding of malingering, this is not required. *See Carmickle*, 533 F.3d at 1160 n.1. The ALJ did identify affirmative evidence of malingering in the record, which is sufficient. *Id.* In particular, the ALJ highlighted various encounters between Mr. Austin and his physicians that call into question the validity of Mr. Austin's subjective symptom reports. *See* AR 21-23. For example, the ALJ referred to reports from Dr. Dotson wherein the doctor stated that Mr. Austin was "observed to walk quickly down the hall without any obvious discomfort" and that Mr. Austin "does not present clinically like someone who is disabled." *See* AR 21. Similarly, the ALJ cited an encounter in August 2010, during which Dr. Roy Johnson, Mr. Austin's psychologist, observed Mr. Austin walking extremely slowly to his appointment but walking at a more rapid pace after he left the office. *See id.* Dr. Johnson then observed Mr. Austin running halfway across an intersection to wait for traffic at the median. *See id.*

Furthermore, the ALJ cited Dr. Dotson's observations that Mr. Austin repeatedly has "a normal affect and conversational tone in the reception area, which drastically changes for the worse when he is interacting with Dr. Dotson in the office." *See id.* The ALJ also noted that Mr. Austin reported seeing munchkins, which Dr. Dotson opined was not consistent with any mental illness. *See* AR 22-23. Finally, the ALJ pointed to statements from various treating and examining physicians indicating potential malingering by Mr. Austin. *See* AR 21. Dr. Dotson stated that Mr. Austin "may be exaggerating his symptoms for secondary gain," and Dr. Johnson opined that "any

psychiatric diagnosis is contaminated by the claimant's lack of cooperation and misleading information provided." *See id.* Similarly, a nurse practitioner at San Francisco General Hospital indicated that Mr Austin was participating in exaggerated pain behavior. *See id.*

Mr. Austin contends that while the ALJ may have justifiably found some of Mr. Austin's statements not credible, the ALJ did not provide sufficiently specific, clear, and convincing reasons for disbelieving his testimony when the entire record is considered. *See* Plaintiff's Motion at 10-12. Since the record contains affirmative evidence of malingering with regards to both physical and psychological symptoms, however, the ALJ's opinion need not establish clear and convincing reasons for concluding that Mr. Austin's subjective complaints were not credible. *See Carmickle*, 533 F.3d at 1160.

Mr. Austin specifically challenges the ALJ's interpretation of various facts in the record indicating malingering. Mr. Austin contends that the "linchpin" of the ALJ's argument, that Mr. Austin "was noted to only episodically use his cane for ambulation when distracted by his cell phone," is not dispositive because there could be multiple explanations for this behavior besides malingering. *See* Pl.'s Mot. at 11-12. Furthermore, Mr. Austin argues that numerous justifications consistent with a finding of disability could explain his increased pace as he crossed the street. *See* AR 12. Finally, Mr. Austin maintains that neither Dr. Dotson, a psychiatrist, nor Dr. Johnson, a psychologist, specializes in spine, orthopedic, or pain problems, making their observations less persuasive. *See id.* While it is true that there could be multiple explanations for Mr. Austin's behavior in these incidents, the ALJ's interpretation of this evidence is a rational one, and thus owed deference. *Magallanes*, 881 F.2d at 750 (courts "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation."); *see also Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (same). Further, the ALJ points to a number of additional facts in the record that provide affirmative evidence of malingering, such as his nurse practitioner's statements of exaggerated pain behavior, and Dr. Dotson's statements that Mr. Austin may have been exaggerating his symptoms for secondary gain. AR 21, 233, 261. This Court thus finds that there was affirmative and substantial evidence of malingering in the record, and that the ALJ thus did not

need to cite to clear and convincing reasons for rejecting Mr. Austin's testimony about the extent of his symptoms as not credible. *Carmickle*, 533 F.3d at 1160.

In this case, the ALJ made a number of specific factual findings in support of his finding that Mr. Austin was not credible. *See* AR 21. In addition to the evidence of malingering discussed above, the ALJ pointed out that Mr. Austin "refuses to cooperate with the court mandated psychologist" and "takes medications that are not prescribed by his physician." *Id.* Moreover, Mr. Austin "has not been fully compliant with his psychiatric medication regime." *Id.* Next, the ALJ cited inconsistencies between Mr. Austin's hearing testimony and his medical records regarding his reported alcohol use. *See id.* Based on these factors, the ALJ rejected Mr. Austin's testimony about the extent of his symptoms "to the extent they are inconsistent with the . . . residual functional capacity assessment." AR 21. The ALJ's opinion considered many of the permissible factors for weighing a claimant's credibility including Mr. Austin's failure to follow prescribed treatments, Mr. Austin's reputation for truthfulness, inconsistencies in Mr. Austin's testimony, and statements from Mr. Austin's treating physicians. Particularly in light of the affirmative evidence of malingering in the record, the Court finds that ALJ's adverse credibility determination is supported with sufficiently specific findings that are substantially supported by the record as a whole. *See Thomas*, 278 F.3d at 959 (the court "may not engage in second-guessing." where "the ALJ's credibility finding is supported by substantial evidence in the record").

B.    Opinion of Dr. Coffa

Next, Claimant argues that the ALJ improperly discredited the opinion of Mr. Austin's treating physician, Dr. Coffa. *See* Plaintiff's Motion at 4-9. The ALJ completely rejected Dr. Coffa's opinions, finding them "neither controlling nor persuasive." AR 22. In doing so, the ALJ provided three justifications: (1) the ALJ could not find any treatment records with Dr. Coffa's name on them, (2) Dr. Coffa "apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported," and (3) Dr. Coffa's report of Mr. Austin's lifting abilities was inconsistent with Mr. Austin's hearing testimony. *Id.*

As a preliminary matter, the Court concludes that Dr. Coffa was Mr. Austin's treating physician. Mr. Austin correctly points out that Dr. Coffa electronically signed multiple treatment records for Mr. Austin between December 2010 and June of 2011. *See* AR 406, 408, 596, 617. Furthermore, throughout the record, other physicians reference Dr. Coffa's involvement with Mr. Austin's treatment. *See* AR 414, 416, 418, 594. Indeed, it is clear that Dr. Coffa possessed an ongoing treatment relationship with Mr. Austin. Thus, to the degree that the ALJ rejected Dr. Coffa's opinion because he could not find treatment records with her name on them, he seems to have overlooked relevant parts of the record.

The ALJ does not cite to any part of the record for his conclusion that Dr. Coffa relied heavily on an uncritical acceptance of Plaintiff's subjective report of symptoms in forming her opinion. AR 22. The only record of Dr. Coffa's the ALJ discusses is a treating physician questionnaire filled out in August 2011. *Id.* That questionnaire asks for the clinical or laboratory findings on which the doctor bases her diagnosis and physical restrictions. AR 388, 390. Dr. Coffa responded that her opinions were based on "MRI and CT of spine showing nerve root compression." AR 390, *see also* AR 388 (same). She also writes that Mr. Austin had "surgery [that] improved [his] pain, but patient still has significant pain," and notes that persistent pain could affect his ability to concentrate. AR 388. There is no other discussion of Mr. Austin's subjective reports of pain. AR 388-92. There is nothing in this record indicating that Dr. Coffa relied uncritically on Mr. Austin's subjective reports of pain, or that her opinion was based primarily on those subjective reports as opposed to the CT and MRI results referenced by Dr. Coffa, or her other observations of his condition both before and after surgery. *See* AR 406, 408, 595-96 (Dr. Coffa's treatment notes from before and after Mr. Austin's April 2011 surgery to relieve his leg pain). In this respect, therefore, the ALJ's decision to reject Dr. Coffa's testimony (as a treating physician) is not supported by substantial evidence in the record.

Furthermore, the ALJ's reliance, in rejecting Dr. Coffa's testimony, on the small inconsistency between Dr. Coffa's diagnosis that Mr. Austin could less than ten pounds and Mr. Austin's testimony that he could lift eight (8) pounds with this left hand and about 15-20 pounds with this right hand, *see* AR 35, was misplaced because the discrepancy was not significant.

8

Moreover, the ALJ having found Mr. Austin not credible, was hard pressed to then rely on Mr. Austin's untrustworthy statements to discredit his treating physician's statements.

As Mr. Austin's treating physician, Dr. Coffa's opinion was entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. *See* 20 C.F.R. § 404.1527(d)(2) (2012). In this case, the ALJ did not consider Dr. Coffa a treating physician and hence did not apply the appropriate standard in evaluating Dr. Coffa's opinion.

Even if the ALJ had correctly applied the standard appropriate to a treating physician in concluding that Dr. Coffa's opinion was not entitled to controlling weight, a treating physician's opinion is nonetheless entitled to some weight. *See Orn v. Astrue*, 495 F.3d 625, 631-33 (9th Cir. 2007). "If a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record, the Administration considers specified factors [listed in 20 C.F.R. §§ 416.927(c) and 404.1527(c)] in determining the weight it will be given." *Id.* at 631. The Ninth Circuit emphasized that "[a] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with substantial evidence in the case record means only that the opinion is not controlling weight, not that the opinion should be rejected." *See id.* at 631-32 (internal quotation marks omitted). The ALJ must still consider the factors listed in § 416.927(c)(2)-(6). *Id.* at 632.

In the current case, the Commissioner argues that the ALJ properly rejected Dr. Coffa's opinion because it "was not well supported by accepted medical techniques." *See* Defendant's Motion at 5. Further, the Commissioner contends that "[w]hile Dr. Coffa electronically signed some treating records, the doctor did not explain the limitations by reference to those records." *See id.* Assuming for the sake of argument that Dr. Coffa's opinions were not well-supported, under *Orn*, the ALJ must still consider the factors listed in 20 C.F.R. § 416.927(c). *See Orn*, 495 F.3d at 631. Those factors include

> the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician

> providing the opinion; and "[o]ther factors" such as the degree of understanding a physician has of the Administration's "disability programs and their evidentiary requirements" and the degree of his or her familiarity with other information in the case record.

*Id.*; *see also* 20 C.F.R. § 416.927(c). In the instant case, the ALJ did not analyze all of the factors enumerated in 20 C.F.R. § 416.927(c) and required by the Ninth Circuit in *Orn*, but simply discredited Dr. Coffa's opinion in its entirety. *See* AR 22. For example, as discussed above, while Dr. Coffa's opinion may have relied partially on reports from Mr. Austin, she cites independent evidence of the "MRI and CT of spine showing nerve root compression" to support her conclusion regarding Mr. Austin's exertional limitations. *See* AR 390. Similarly, the record documents a surgery to relieve Mr. Austin's back and leg pain in April of 2011, which is also consistent with Dr. Coffa's testimony of Mr. Austin's long history of pain. *See* AR 599-602. Dr. Coffa treated Mr. Austin both before and after his surgery, and thus would have had the opportunity to see the progression of his condition over this critical period, and to observe the trajectory of his recovery. AR 406, 408, 595-96, 617. Furthermore, the ALJ did not consider Dr. Coffa's specialty or her familiarity with Mr. Austin and his record as a whole. *See* AR 22. At the time of the hearing, Dr. Coffa had seen Mr. Austin at least four times over the course of almost a year. AR 388-92, 406, 408, 596, 617.

Accordingly, the ALJ's rejection of Dr. Coffa's opinion cannot be affirmed on this record. The ALJ failed to accord Dr. Coffa's opinion as that of a treating physician. Even if the ALJ had properly found Dr. Coffa's opinion was not entitled to controlling weight, under *Orn*, the ALJ should have analyzed all of the applicable factors listed in § 416.927(c) to determine the appropriate weight to accord to Dr. Coffa's opinion. The ALJ did not do so. These failures constitute reversible legal error.

C.    <u>Opinion of Dr. Al-Mufti</u>

Additionally, Mr. Austin contends that the ALJ committed legal error by failing to credit the opinion of his consultative examining psychiatrist, Dr. Jena Al-Mufti. *See* Plaintiff's Motion at 13-14. Dr. Al-Mufti provided a consultative psychiatric evaluation of Mr. Austin on July 27, 2010. *See* AR 23, 210-15. During this single appointment, Dr. Al-Mufti reviewed Mr. Austin's records,

conversed with Mr. Austin, and administered tests designed to determine Mr. Austin's level of mental functioning. *See* AR 210-15.  In conclusion, Dr. Al-Mufti assigned Mr. Austin a Global Assessment of Functioning (GAF) of 45-50, denoting serious symptoms. *See* AR 23, 213.  After reviewing her report, the ALJ gave Dr. Al-Mufti's opinion "no weight because she did not administer any malingering tests despite the extensive record, which shows symptom exaggeration." *See* AR 23.

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester*, 81 F.3d at 830.  While the opinion of an examining physician is entitled to less deference than that of a treating physician, "the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31.  Dr. Al-Mufti's diagnosis of antisocial personality disorder, *see* AR 213, is directly contradicted by Mr. Austin's treating psychiatrist, Dr. Dotson, who opined that Mr. Austin "does not present clinically like someone who is disabled." *See* AR 236.  Further, as mentioned, there is extensive evidence of Mr. Austin's potential malingering.  Dr. Dotson opined that Mr. Austin "may be exaggerating his symptoms for secondary gain," and Mr. Austin's nurse practitioner suggested that Mr. Austin participates in exaggerated pain behavior. *See* AR 233, 261.  Dr. Johnson stated that "any psychiatric diagnosis is contaminated by the claimant's lack of cooperation and misleading information provided." *See* AR 232.  Despite this significant evidence of potential malingering and Dr. Al-Mufti's statement that she reviewed Mr. Austin's record (which made reference to potential malingering), *see* AR 210, Dr. Al-Mufti failed to administer any malingering tests.  The ALJ had a sufficient basis to reject Dr. Al-Mufti's opinion.  Moreover, given the ALJ properly discredited Mr. Austin's testimony, the ALJ's rejection of Dr. Al-Mufti's opinion is based on specific and legitimate reasons supported by substantial evidence. *See Andrews*, 52 F.3d at 1043 (holding that "an opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded, once those complaints themselves have been properly discounted.").

D.  Remedy

Having concluded that the ALJ erred in his decision denying benefits, the Court must decide whether or not there should be a remand for further administrative proceedings. In *Benecke v. Barnhart*, 379 F.3d 587 (9th Cir. 2004), the Ninth Circuit held that

> [r]emand for further administrative proceedings is appropriate if enhancement of the record would be useful. Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits. More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* at 593. The ALJ erred in rejecting Dr. Coffa's opinion without considering all the relevant facts; it is not clear what weight the ALJ would ultimately give to Dr. Coffa's opinion upon proper consideration. Nor is it not clear from the record that the ALJ would be required to find Mr. Austin disabled if Dr. Coffa's testimony were credited in part. On remand, the ALJ should evaluate Dr. Coffa's opinion in light of the factors enumerated in *Orn*, and reassess Mr. Austin's claim of disability in light of that evidence.

This order disposes of Docket Nos. 13 and 21.

IT IS SO ORDERED.

Dated: May 9, 2013

_____
EDWARD M. CHEN
United States District Judge